IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID W. FINK, | ) | CASE NO. 5:13 CV 1393 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by David W. Fink under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 15. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 5.

[6] ECF # 13.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] After review of the briefs, the issues presented, and the record, it was determined that this case can be decided without oral argument and, therefore, the telephonic oral argument scheduled for June 18, 2014,[10] was canceled.[11]

**B.  Background facts and decision of the Administrative Law Judge ("ALJ")**

Fink, who was 48 years old at the time of the hearing,[12] dropped out of the tenth grade,[13] lives with his girlfriend,[14] and worked previously as an auto mechanic.[15] Despite a heart attack in 2009, Fink stated in 2010 that he remained a two-pack per day smoker, as he has been for 30 years.[16]

---

[7] ECF # 21 (Fink's brief); ECF # 22 (Commissioner's brief), ECF # 25 (Fink's reply brief.

[8] ECF # 21-1 (Fink's charts); ECF # 22-1 (Commissioner's charts).

[9] ECF # 18 (Fink's fact sheet).

[10] ECF # 26.

[11] ECF # 27.

[12] ECF # 18 at 1 (citing transcript).

[13] Transcript ("Tr.") at 21.

[14] *Id.* at 17.

[15] *Id.* at 22.

[16] *Id.* at 21.

The ALJ, whose decision became the final decision of the Commissioner, found that Fink had the following severe impairments: chronic obstructive pulmonary disease, coronary artery disease, status-post cardiac catheterization, and hypertension.[17]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Fink's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he should avoid all exposure to fumes, dusts, gases, and poor ventilation. Secondary to reduced endurance, he can work in an environment free of fast-paced production requirements or quotas. He can sit for thirty minutes at a time before having to stand fifteen to twenty minutes at a time, before resuming a seated position.[18]

The ALJ decided that this RFC precluded Fink from performing his past relevant work.[19]

Based on an answer to a hypothetical question posed to the vocational expert ("VE") at the hearing setting forth the RFC finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Fink could perform.[20] The ALJ noted that although the VE's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy.[21] The ALJ further stated, "[t]he Dictionary of Occupational Titles does not address the sit or

---

[17] *Id.* at 16.

[18] *Id.* at 18.

[19] *Id.* at 22-23.

[20] *Id.* 23-24.

[21] *Id.* at 24.

stand option; rather, the testimony on this subject is based upon the vocational expertise and experience of the vocational expert."[22] The ALJ, therefore, found Fink not under a disability.[23]

**C.      Issues on judicial review and decision**

Fink asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Fink presents the following issue for judicial review:

Whether the ALJ erred in rejecting the opinion of treating physician Narendra Sahney, Ph.D., M.D.[24]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded.

## Analysis

**A.      Standards of review**

*1.      Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

---

[22] *Id.*

[23] *Id.*

[24] ECF # 21 at 2.

Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[25]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[26] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[27]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

---

[25] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[26] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[27] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[28]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[29]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[30] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[31]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[32] Although the treating

---

[28] 20 C.F.R. § 404.1527(d)(2).

[29] *Id.*

[30] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[31] *Id.*

[32] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[33] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[34] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[35]

In *Wilson v. Commissioner of Social Security*,[36] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[37] The court noted that the regulation expressly contains a "good reasons" requirement.[38] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

---

[33] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[34] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[35] *Id.* at 535.

[36] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[37] *Id.* at 544.

[38] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[39]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[40] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[41] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[42] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[43]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[44] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[45] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that

---

[39] *Id.* at 546.

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[45] *Id.* at 375-76.

court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[46] *Blakley v. Commissioner of Social Security*,[47] and *Hensley v. Astrue*.[48]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[49] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[50] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[51] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[52]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[53] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the

---

[46] *Rogers*, 486 F.3d at 242.

[47] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[48] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[49] *Gayheart*, 710 F.3d at 376.

[50] *Id.*

[51] *Id.*

[52] *Rogers*, 486 F.3d at 242.

[53] *Gayheart*, 710 F.3d at 376.

standards for controlling weight set out in the regulation.[54] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[55] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[56] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[57]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[58]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[59] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Rogers*, 486 F.3d 234 at 242.

-10-

giving those opinions controlling weight.[60] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[61] or that objective medical evidence does not support that opinion.[62]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[63] The Commissioner's *post hoc* arguments on judicial review are immaterial.[64]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision), an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

---

[60] *Blakley*, 581 F.3d at 406-07.

[61] *Hensley*, 573 F.3d at 266-67.

[62] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[63] *Blakley*, 581 F.3d at 407.

[64] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[65]

- the rejection or discounting of the weight of a treating source without assigning weight,[66]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[67]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[68]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[69] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[70]

The Sixth Circuit in *Blakley*[71] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to

---

[65] *Blakley*, 581 F.3d at 407-08.

[66] *Id.* at 408.

[67] *Id.*

[68] *Id.* at 409.

[69] *Hensley*, 573 F.3d at 266-67.

[70] *Friend*, 375 F. App'x at 551-52.

[71] *Blakley*, 581 F.3d 399.

support the ultimate finding.[72] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[73]

In *Cole v. Astrue*,[74] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[75]

**B.  Application of standards**

This case presents yet again the issue of whether the ALJ in this case complied with the treating physician rule and good reasons requirement in handling the opinions of Fink's treating physician, Narendra Sahney, Ph.D., M.D.

As an initial observation, this matter involves a 2012 decision rendered prior to the Sixth Circuit's 2013 decision in *Gayheart*, which reiterated and restated its teaching on the treating physician rule. In such circumstances, there has been a willingness by courts to be less demanding when reviewing the ALJ's compliance with the distinct two-step analytic

---

[72] *Id.* at 409-10.

[73] *Id.* at 410.

[74] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[75] *Id.* at 940.

form clearly prescribed in *Gayheart* but instead to determine compliance with the treating

physician rule and good reasons requirement after a holistic reading of the ALJ's decision.

As I recently observed in *Aiello-Zak v. Commissioner of Social Security*,[76] the relevant

touchstone is whether the ALJ considered the specific factors applicable to weighing the

opinion of the treating source and then advanced good reasons in the record for arriving at

the decision on weight.[77] Put simply, as the Sixth Circuit stated in *Brasseur v. Commissioner*

*of Social Security*,[78] what is required is that the ALJ's determination of weight assigned to

a treating source be "sufficiently specific to make clear the weight given to the opinion and

the reasons for that weight."[79]

---

[76] *Aiello-Zak v. Comm'r of Soc. Sec.*, No. 5:13 CV 987, 2014 WL 4660397 (N.D. Ohio Sept. 17, 2014).

[77] *Id.*, at *5 (citation omitted).

[78] *Brasseur v. Comm'r of Soc. Sec.*, 525 F. App'x 349 (6th Cir. 2013).

[79] *Id.* at 350 (citing *Gayheart*, 710 F.3d at 376). Although this approach is understandably supportable as a transition step while the rule in *Gayheart* works itself firmly into the system (a system perhaps previously unaccustomed to such rules), I remain concerned that this approach could in the future be used to hollow out or blunt the clear, precise, and frequently restated rule of *Gayheart*. In such a situation, *Gayheart* could become a mere lofty ideal to which a ritual homage is given instead of a measurable benchmark for ALJs to use in formulating decisions and for district courts to employ when reviewing them. It should not be lost that, taken together, *Wilson*, *Blakely*, and *Gayheart* reflect a strong affirmation of the need – as set forth in the Commissioner's own regulations – for a distinct two-step analysis that then provides a basis for meaningful judicial review of any decision to downgrade the weight given to the opinion of a treating source.

That said, I turn to the opinions at issue here. On March 14, 2011, Dr. Sahney prepared a single-page asthma RFC questionnaire[80] and a two-page assessment of Fink's mental ability to do specified work-related activities.[81]

In the asthma opinion, Dr. Sahney opined that Fink's condition was "severe," and that it: (1) restricted him to standing and sitting for no more than two hours at a time; (2) precluded him from lifting on even an occasional basis; and (3) eliminated any exposure to dust, smoke or fumes.[82] In the narrative portion of the opinion, Dr. Sahney added that Fink's condition required treatment with Advair and that Fink was a frequent user of an Albuterol inhaler, which, Dr. Sahney stated, produced a "severe" functional limitation.[83]

As to the mental work-related functional assessment, Dr. Sahney's opinion was that Fink had moderate or marked limitations in the following areas of function:

(1)     ability to relate to other people;

(2)     ability to attend meetings;

(3)     ability to maintain concentration and attention for extended periods;

(4)     ability to remember and carry out instructions;

(5)     ability to respond to customary work pressures;

(6)     ability to respond appropriately to changes in the work setting; and

---

[80] Tr. at 328.

[81] *Id.* at 329-330.

[82] *Id.* at 328.

[83] *Id.*

(7)     ability to behave in an emotionally stable manner.[84]

Dr. Sahney further stated that Fink's conditions had been at their present level of severity for one year and are "progressively getting worse."[85] He observed that Fink's current medication does not control his symptoms and that the dosage "needs to be increased."[86] He concluded by stating that Finks' condition would likely deteriorate if placed under the stress of a job but noted that Fink remained capable of managing any benefits received in his own best interest.[87] He opined that Fink's conditions would cause him to be absent from work about one day per month.[88]

Because the ALJ considered these two opinions at different places in the decision, and offered distinct reasons for assigning differing weights to each opinion, I will also consider each of the opinions separately. In addition, I will then address the issue of the weight given to an examining source, which was not raised by the parties but which flows from the analysis developed below.

## 1.     *The asthma opinion*

The ALJ first addressed Dr. Sahney's opinions set forth in the asthma questionnaire. After noting that Dr. Sahney was "the claimant's treating physician," the ALJ noted two of

---

[84] *Id.* at 329-30.

[85] *Id.* at 330.

[86] *Id.*

[87] *Id.*

[88] *Id.*

-16-

the three relevant, specific findings of the asthma opinion – that Fink could not work more than two hours in an eight hour day and that he could not tolerate dust, fumes, or smoke.[89] The ALJ found that although these observations were the result of Dr. Sahney's examination of Fink, and were "within the bounds of [Dr. Sahney's] professional certification," only the finding as to the inability to work around dust, fumes, or smoke was "appropriate."[90] The "balance of [this] opinion," the ALJ concluded, was entitled to only "little weight," because it was "not consistent with [Dr. Sahney's] own findings (such as the physical examination [of January 4, 2011]), [and] was based on a sporadic treatment record, in that [Fink's] last treatment was in March of 2011, and consisted of a five minute consultation to refill prescriptions."[91]

In reviewing the ALJ's decision as to the asthma opinion, it is clear that despite not strictly conforming to the *Gayheart* template for analyzing the opinion of a treating source, the ALJ here does clearly assign a weight to this portion of Dr. Sahney's opinion and then offers two specific reasons for giving that weight rather than affording the opinion controlling weight. As such, the form of the ALJ's treatment appears to be sufficient under the standards cited above.

Thus, the determinative inquiry is whether the two reasons given for the lesser weight assigned are "good reasons" under the case authority.

---

[89] Tr. at 22.

[90] *Id.*

[91] *Id.*

As to the ALJ's first reason – that Dr. Sahney's functional conclusions in the asthma opinion are inconsistent with Dr. Sahney's own treatment notes – only one treatment note is expressly referenced here, an examination of Fink on January 4, 2011.[92] The Commissioner argues, however, that this note – as well as other examinations of Fink by Dr. Sahney – is inconsistent with the opinion because the note shows normal muscle strength and tone, a normal gait and station, and normal range of motion, while Dr. Sahney's opinion was that Fink could not sit or stand for more than two hours at a time and that he could not lift on even an occasional basis.[93]

In that regard, the stated basis for Dr. Sahney's opinion was not any defect in muscle tone or physical injury to the spine, but rather "severe large airway disease" that required Fink to frequently use an inhaler for steroid treatment.[94] Thus, even if the Commissioner's observations regarding normal muscle strength and range of motion are actually what the ALJ meant by his mere general citation to the examination notes of January 4, 2011 – an argument that can only be surmised in the absence of any specific statement of such a reason by the ALJ himself – a review of Dr. Sahney's asthma opinion shows that his functional

---

[92] To the extent that the ALJ meant that some other, additional, unnamed portion[s] of Dr. Sahney's treatment notes was also in conflict with his opinion, the failure to specify what portion – beyond this single example – is fatal to such an argument. Meaningful judicial review requires, at a minimum, that the ALJ specifically identify what evidence is being relied upon in determining that a treating source's opinion is inconsistent with evidence in the record. *Wilson*, 378 F.3d at 546.

[93] ECF # 22 at 11.

[94] Tr. at 328.

-18-

limitations were based on the severity of Fink's breathing disability, not on any infirmity in his muscle tone.[95] Nothing in the examination notes cited by the Commissioner here – which is in the nature of a *post hoc* rationale since it is not the articulated reason of the ALJ – is contrary to that opinion. As such, the first reason for discounting the opinion of Dr. Sahney in the asthma questionnaire is not a good one.

The second reason, which is that Dr. Sahney had the benefit of only a "sporadic" treatment relationship with Fink, is also flawed.

First, in the *Gayheart* rubric, questions about the length of a treating relationship only occur in the second step of the two-step analysis, or *after* it has already been determined that the opinion will not be afforded controlling weight because it is not supported by clinical and diagnostic techniques or is inconsistent with the other substantial evidence in the record. Indeed, this is the precise situation under which *Gayheart* itself arose, and which prompted its well-known admonition to not conflate the two analytical steps into one. As *Gayheart* stated, and as was expressly noted above, an ALJ does not provide "good reasons" for downgrading the opinion of a treating source by raising, as here, asserted problems with the

---

[95] As Fink notes, it is likely that Dr. Sahney based the functional limitations opinion here on the Pulmonary Function Test (PFT) (Tr. at 240-44) that Dr. Sahney ordered in 2009 (Tr. at 224-25), which resulted in diagnosing Fink with COPD and instituting treatment for that condition (Tr. at 222-23). As Fink also notes, a PFT test readily qualifies as an acceptable clinical and diagnostic technique that will support the granting of controlling weight to the opinion of a treating source. ECF # 21 at 9 (citing 20 C.F.R. § 404.1527(c)(2)).

length of the treating relationship, since this factor is only properly applied after the determination has been made not to afford the opinion controlling weight.[96]

Further, although it is accurate to note that Fink's final visit to Dr. Sahney was not to receive treatment,[97] it is misleading to claim that this visit establishes that the treatment relationship was sporadic. As the record shows, Fink saw Dr. Sahney six times during the period between November, 2008, and December, 2009.[98] After this, there was a period when Fink could not afford treatment, but then resumed it.[99] Fink indicates that during this period when he could not afford treatment, Dr. Sahney remained knowledgeable about Fink's condition through his girlfriend, who is a nurse and works at the same hospital as Dr. Sahney.[100] Therefore, even if the issue of the length and character of the treating relationship was properly considered at this stage, the single fact cited by the ALJ as proof of sporadic treatment is not a good reason for reaching that conclusion in light of the more complete narrative set forth above.

In sum, for the reasons stated, the ALJ provided no good reasons for discounting the functional limitations opinion of Dr. Sahney set out in the asthma questionnaire.

---

[96] *Gayheart*, 710 F.3d at 376.

[97] As Fink concedes, it was to obtain a refill of prescriptions and to fill out his disability forms. ECF # 21 at 8.

[98] ECF # 21, Attachment at 2 (citing transcript).

[99] *Id.* at 7 (citing transcript).

[100] *Id.* (citing transcript).

### 2. *The mental work-related functional assessment*

In a mental work-related functional assessment Dr. Sahney's opinion that Fink had specified moderate and marked limitations in certain areas was given no weight by the ALJ for three reasons: (1) because the opinion was based only on Dr. Sahney's "observations;" (2) because it was inconsistent with other evidence in the record; and (3) because it was inconsistent with Dr. Sahney's own treatment notes.[101]

The Commissioner does not advance any arguments to support the ALJ's contention that Dr. Sahney's opinion may be discounted because it is based on Dr. Sahney's observations of Fink and "not on any course of treatment."[102] Indeed, it has been recognized that treating source opinions are to be accorded great weight especially when those opinions are based on that source's "continuing observation of the patient's condition over a prolonged period of time."[103]

Further, while the Commissioner now asserts that Dr. Sahney's mental functioning opinions should be discounted because he "is an internist, not a psychologist,"[104] the ALJ made no such argument. Rather, the ALJ expressly noted the opposite, stating that Dr. Sahney's opinions in this regard were made "within the bounds of his professional

---

[101] Tr. at 22.

[102] *Id.*

[103] *Russo v. Astrue*, 421 F. App'x 184, 190 (3rd Cir. 2011) (citation omitted).

[104] ECF # 22 at 13.

-21-

certifications."[105] Thus, in addition to being an impermissible *post-hoc* rationalization that cannot now be considered, this argument of the Commissioner also suffers from the inconvenient fact that it is specifically rejected by the ALJ himself.

Accordingly, I now consider the remaining two reasons advanced for discounting Dr. Sahney's mental limitations opinion:

(1)    that it is inconsistent with "the few findings entered into the record, such as the examination notes at exhibit file (1F/45)," and

(2)    that it is inconsistent with Dr. Sahney's treatment notes "in that he reported that the claimant had no history of mental impairment (5F/1), having earlier been the diagnostician for the claimant's anxiety (4F/11) and depression (4F/6)."[106]

I note initially here that the ALJ assigned absolutely "no weight" to Dr. Sahney's mental limitations opinion. Thus, the reasons given must support not merely a reduced, yet meaningful weight for these opinions of a treating source but must justify giving no weight at all to these opinions.

The two purportedly contradictory findings cited by the ALJ are both general examination sheets. Exhibit 1F/45 documents the visit at which Dr. Sahney discussed Fink's PFT results, and prescribed Advair and an Albuterol inhaler for his "severe COPD."[107] On the first sheet, Dr. Sahney also noted in the part cited by the ALJ that Fink was alert, oriented

---

[105] Tr. at 22.

[106] *Id.*

[107] Tr. at 222-23.

to person, place, and time; had appropriate affect; and that his insight, judgment was intact.[108] In the next cited contradiction, Exhibit 5F/1, Dr. Sahney was responding in June of 2010 to a questionnaire from the Ohio Bureau of Disability Services asking him as an initial inquiry if Fink had "a history of any mental impairment."[109] Dr. Sahney checked the box to respond "no."[110]

The ALJ's attempt to totally reject any mental functional limitation opinion here appears to be a form of "gotcha" reasoning that does not hold up well to any serious examination. First, the ALJ himself acknowledges that Fink has "determinable mental impairments of depression and anxiety."[111] Next, the ALJ himself acknowledges that Dr. Sahney diagnosed those conditions.[112] Finally, on the basis of a few check-box answers to general questions, the ALJ concludes that this is substantial evidence that Dr. Sahney completely and openly contradicted himself – even on the same form– thus rendering any opinion as to the severity of any limitations from the mental conditions the ALJ acknowledges as totally worthless.

Because the matter will need to be remanded for the reasons already expressed, I do not need to conclusively adjudicate the issue of whether the ALJ has actually provided

---

[108] *Id.* at 222.

[109] *Id.* at 304.

[110] *Id.*

[111] *Id.* at 17.

[112] *Id.* at 22.

substantial evidence that Dr. Sahney is actually out of touch with reality such that his mental function opinion has absolutely no worth. To ask the question is to answer it. But on remand I urge that this matter be carefully reviewed. At a minimum, if there is a question as to what Dr. Sahney meant by checking these few boxes, I remind the ALJ that he is free to ask Dr. Sahney to simply explain his answer as an alternative to assuming the highly improbable conclusion that was assumed here.

### 3.    *Dr. Moten*

Finally, I note that while the opinions of Dr. Sahney, the treating source, were rejected entirely or given only little weight, at least in part because they rested on a "sporadic" treating relationship, the opinion of Gregory Moten, D.O., a one-time examining consultant, was given "considerable weight."[113] As a reason for this assignment of weight, the ALJ stated simply that it was because "Dr. Moten examined the claimant and was reporting within the bounds of his professional certification."[114]

Of course, these two factors were also true of Dr. Sahney. Thus, on the record, there is no unique reason why Dr. Moten's examination should be preferred to Dr. Sahney's. Moreover, Dr. Moten's examination was done in August, 2010 – well before Dr. Sahney gave his opinions in March, 2011. Given all these elements, there is nothing in the record to show why the treating physician got the short end of the stick as opposed to a one-time

---

[113] Tr. at 22.

[114] *Id.*

examiner, and the preference for the opinion of a one-time examining physician significantly undermines the "sporadic treatment" reason for denigrating the opinion of Dr. Sahney.

Again, on remand I urge that if the opinion of a non-treating source is to be given greater weight than that of a treating source, substantial reasons must be given for that decision – reasons which are not in conflict with the reasons advanced for diminishing the weight given to the treating source.

## Conclusion

For the reasons stated above, substantial evidence does not support the finding of the Commissioner that Fink had no disability. Therefore, the denial of Fink's application is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.


Dated: September 26, 2014                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge